


RECEIVED LM
1/20/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1  WARREN V. JOHNSON
2  warrenvjohnson@gmail.com
   215 E 18th St
3  Lawrence, KS 66044
4  Plaintiff

5  **IN THE UNITED STATES DISTRICT COURT**
6  **FOR THE NORTHERN DISTRICT OF ILLINOIS**

7  MR. WARREN V. JOHNSON    Case No.: 1:26-cv-00441
       Plaintiffs,
8                            **FIRST AMENDED**
9      v            **COMPLAINT FOR**
       .            **COPYRIGHT INFRINGEMENT**
10 EARLY WARNING SERVICES,   **AND UNJUST ENRICHMENT**
   LLC
11 Defendants.            **JURY TRIAL DEMANDED**

12

13

14  **FIRST AMENDED COMPLAINT FOR COPYRIGHT INFRINGEMENT**
15           **AND UNJUST ENRICHMENT**

16              **INTRODUCTION**

17     Plaintiff Warren V. Johnson ("Johnson"), for his Complaint against Defendant
18
19  Early Warning Services, LLC ("EWS"), alleges as follows:

20  **NATURE OF THE ACTION**

21  1.  This is an action for copyright infringement and unjust enrichment arising
22
23      from Defendant Early Warning Services, LLC's ("EWS") unauthorized
24      retention and continued use of Plaintiff Warren V. Johnson's copyrighted
25      intellectual property management templates (the "Indexes" or "Tools").
26

27

28

- 1 -

2. The parties settled all employment-related disputes in August 2023, with a settlement agreement that explicitly preserved "claims that may arise after Johnson signs this Agreement

3. This action concerns EWS's independent, post-settlement conduct. EWS has recently admitted in federal appellate filings that it does **not** claim ownership or trade secret protection over the "templated Indices" (the rows, columns, headings, and proprietary formulas)

4. Despite admitting it has no proprietary interest in these "Tools," EWS's Senior Intellectual Property Counsel has admitted under oath that the Tools remain "indispensable" to EWS's daily operations. EWS continues to reproduce and use Johnson's copyrighted property without his authorization or compensation.

## PARTIES

5. **Plaintiff Warren V. Johnson** is an individual residing in Lawrence, Kansas. He is the creator and sole author of the copyrighted Indexes.

6. **Defendant Early Warning Services, LLC ("EWS")** is a Delaware limited liability company with its principal place of business in Scottsdale, Arizona. EWS maintains an office and employs personnel, including its Senior Intellectual Property Counsel, Paras Shah, in Chicago, Illinois, within this Judicial District.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a) because this action arises under the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.*

9. **Venue is proper** in this District under 28 U.S.C. § 1400(a) and 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred here. Specifically, EWS's agent, Paras Shah, uses, maintains, and populates the infringing Indexes from his office in this District, and executed the sworn declaration admitting to such use in Chicago, Illinois.

10. This Court has personal jurisdiction over EWS because it regularly conducts business and employs individuals who commit the tortious acts at issue within this District.

## FACTUAL ALLEGATIONS

**A. Creation and Ownership of the Indexes** .

11. Years before his employment with EWS, between 2010 and 2012, Johnson conceived, created, and authored a suite of sophisticated Microsoft Excel-based intellectual property management frameworks (the "Indexes").

12. The Indexes are original works of authorship comprising Johnson's unique selection, coordination, and arrangement of data fields, proprietary formulas, algorithms, and analytical frameworks.

13. Johnson brought these fully-formed Indexes with him to EWS in 2014 as his pre-existing personal property.

- 3 -

14. The United States Copyright Office has issued registrations for these works.

**B. The August 2023 Settlement Agreement**

15. In August 2023, Johnson and EWS executed a settlement agreement.

16. Section 6 of that agreement expressly preserved "claims that may arise after Johnson signs this Agreement."

17. This action concerns EWS's conduct *after* the execution of that agreement—specifically, its decision to retain, reproduce, and continue using Johnson's copyrighted property without a license.

**C. EWS's Admissions of Post-Settlement Use**

18. EWS has admitted in recent judicial filings that it continues to use Johnson's property to this day.

19. In an August 15, 2024, declaration executed in this District, EWS's Senior Intellectual Property Counsel, Paras Shah, admitted that the Indexes are "indispensable" to EWS's operations.

20. Mr. Shah further admitted that his job duties include "populating these indices" and "maintaining them," and that EWS "continues to make these investments... to this day".

21. In subsequent appellate filings, EWS has explicitly distinguished between the underlying data it claims to own and the "templated Indices" (the "Tools") created by Johnson.

22. EWS admitted it "does not claim the templated Indices (i.e., the rows, columns, headings, standard formulas, and conditional rules and formatting) are trade secrets," yet it continues to use these copyrighted "Tools" to "house and present" its data without Johnson's authorization.

23. This continued, unauthorized use of Johnson's copyrighted expression constitutes a new and independent series of infringements occurring after the parties' August 2023 settlement.

24. Plaintiff is the sole owner of the valid and subsisting United States Copyright Registrations for the proprietary software tools (collectively, the "Copyrighted Works"). These include:

   1. Reg. No. **TXu002519256** ('Invention Disclosure Management System'), effective December 30, 2025; and

   2. Reg. No. **TXu002520557** ('Intellectual Property General Matter Management System'), effective January 9, 2026.

25. A copy of the Notice email from the Copyright Office (Exhibit D) and an unofficial proofs thereof pending mail delivery (Exhibit E) are attached hereto. These registrations constitute prima facie evidence of the validity of the copyrights pursuant to 17 U.S.C. § 410(c).

## **COUNT I**

### **COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**

24. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

25. Plaintiff is the sole owner of valid copyrights in the Copyrighted Works.

26. EWS has admitted that these Copyrighted Works—the rows, columns, headings, and proprietary formulas—are not its trade secrets.

27. Despite this admission, EWS has continued to reproduce, distribute, and create derivative works based upon the Copyrighted Works without Plaintiff's authorization.

28. EWS's infringement of the Copyrighted Works is willful. EWS has full knowledge of Johnson's authorship, has been put on notice of his claims, and continues its unauthorized use in reckless disregard of his copyrights.

29. This unauthorized use of the Copyrighted Works constitutes a series of new, independent acts of infringement that began after the parties settled their prior employment-related disputes in August 2023.

30. Defendant's infringement of the Copyrighted Works has been and continues to be willful. Defendant has admitted in sworn declarations and court filings that Plaintiff's Copyrighted Works are "indispensable" and "critical" to its ability to compete in the financial services marketplace. Specifically:

31. **Admitted Value:** In a Declaration filed August 15, 2024, Defendant's Senior IP Counsel, Paras Shah, admitted that the Indices (the Copyrighted Works) are necessary to "track the development, harvesting, acquisition, and enforcement of EWS's intellectual property rights."

- 6 -

32. **Admitted Competitive Necessity:** In filings before the Ninth Circuit (Case 24-7315), Defendant admitted the Copyrighted Works contain "proprietary data vital to EWS's patent and trademark strategies" and that "maintaining the secrecy of EWS's indices is critical to EWS's ability to effectively develop, harvest, acquire, and enforce its intellectual property

33. Pursuant to 17 U.S.C. § 504(b), Plaintiff is entitled to recover any profits of the Defendant that are attributable to the infringement of the Copyrighted Works. Because Defendant has admitted these tools are "vital" to its core business strategy and IP enforcement—which protects its market share in the financial services industry—Plaintiff alleges that a portion of Defendant's corporate revenues and operational efficiencies are directly attributable to the use of Plaintiff's proprietary software.

34. As a direct result of EWS's infringement, Plaintiff has suffered damages and is entitled to EWS's profits attributable to the infringement.

**WHEREFORE,** Plaintiff respectfully requests judgment against EWS and awards for:

    a. A declaration that Defendant has infringed Plaintiff's valid Copyright Reg. No. **TXu002519256** and Reg. No. **TXu002520557**;

    b. An order permanently enjoining Defendant from using, copying, or displaying Plaintiff's software tools;

    c.  An award of actual damages and **disgorgement of Defendant's profits** attributable to the infringement pursuant to 17 U.S.C. § 504(b), including the value of the "competitive advantage" Defendant admitted to receiving;

    d.  Statutory damages for willful infringement (if applicable to post-registration conduct);

    e.  Costs and reasonable attorney's fees.

## COUNT II

## UNJUST ENRICHMENT

31. Plaintiff incorporates the preceding paragraphs as if fully set forth herein.

32. Following the August 2023 settlement, EWS knowingly obtained and retained a significant benefit through the continued, unauthorized use of Plaintiff's Copyrighted Works.

33. EWS has explicitly admitted in judicial filings that it does not claim ownership or trade secret protection over the "templated Indices" (the Copyrighted Works) created by Johnson, which include the rows, columns, headings, and proprietary formulas.

34. Despite admitting it has no proprietary claim to these Copyrighted Works EWS's Senior Intellectual Property Counsel has admitted under oath that the "Tools" are "indispensable" to EWS's operations.

35. EWS's own admissions establish the immense value it derives from the Indexes, as it continues to "populate," "maintain," and "make investments" in using these frameworks to track and enforce its own intellectual property rights

36. It would be inequitable and unjust for EWS to retain the benefit of these "indispensable" Copyrighted Works without paying their reasonable value to Johnson, particularly because this use occurs entirely outside the scope of the parties' settled employment relationship.

**WHEREFORE,** Plaintiff respectfully requests judgment against EWS and awards for:

    a. Restitution in an amount equal to the value of the benefits EWS has unjustly retained

    b. Pre- and post-judgment interest.

<strong>JURY DEMAND</strong>

37. Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


Dated: _January 20_, 2026


    /s/ Warren V. Johnson

    Warren V. Johnson

215 E 18th St
Lawrence, KS 66046
Tel: (208) 317-1686
Email: warrenvjohnson@gmail.com

**Certificate of Service**

I, Warren Johnson, hereby certify that on **January 18, 2026**, I electronically filed the foregoing First Amended Complaint with the Clerk of the Court using the Pro Se Portal. I further certify that a copy of this First Amended Complaint will be served on the Defendant, Early Warning Services, LLC, together with the Summons and Original Complaint once the Summons has been issued by the Clerk.

Respectfully submitted,

/Warren V Johnson/

Warren Johnson

215 E. 18th St

Lawrence, KS 66044

warrenvjohnson@gmail.com

# THE EXHIBIT LIST

| Exhibit A | EXCERPTS FROM SHAH DECLARATION |
|---|---|
| Exhibit B | EWS REPLY BRIEF EXCERPTS |
| Exhibit C | Pages from EWS Appeal Brief  (9th Circuit,Case: 24-7315, Dkt: 25.1 at pg 44, 45) |
| Exhibit D | The Email from the Copyright Office regarding Reg. No. TXu002519256. |
| Exhibit E | The Unofficial Certificate Preview for Reg. No. TXu002520557. |

# EXHIBIT A

1    I, Paras Shah, declare under penalty of perjury as follows:

2    1.    I am a resident of the State of Illinois, over eighteen years of age, and

3    employed by Plaintiff Early Warning Services, LLC ("EWS") as its Senior

4    Intellectual Property Counsel. The statements made in this Declaration are true and

5    based on my personal knowledge and the business records that EWS maintains as part

6    of the ordinary course of its business.

7    **A.    EWS's Intellectual Property Indices**

8    2.    Specific members of the Intellectual Property team in EWS's legal

9    department maintain indices containing detailed information about ongoing legal

10   matters and business initiatives involving EWS's intellectual property, including its

11   patents, trademarks, and domain names. Among my job duties as EWS's Senior

12   Intellectual Property Counsel is populating these indices with EWS's data and

13   maintaining them to ensure they remain accurate and current. This enables EWS's

14   legal department to track the development, harvesting, acquisition, and enforcement

15   of EWS's intellectual property rights.

16   3.    When Defendant Warren Vurl Johnson ("Johnson") was employed as

17   EWS's Senior Intellectual Property Counsel, his job duties also included populating

18   the indices with EWS's data and maintaining the accuracy and currency of those

19   indices.

20   4.    While some of the data in EWS's indices is publicly accessible, such as

21   patent or trademark application numbers and filing dates, much of the data in those

22   indices is privileged, proprietary to EWS, highly confidential, and valuable precisely

23   because EWS maintains its secrecy.

24   5.    For example, EWS's Concept Brief Index and Invention Disclosure

25   Index track titles of inventions and notes, among other data. Working titles of

26   unpublished inventions often contain technical detail that can disclose aspects of the

27   underlying inventions to those familiar with the subject matter. The notes in EWS's

28   indices often reflect the details of consultations between EWS's attorneys and

1

1   inventors, as well as legal advice about which components of inventions would be

2   considered patentable. The same was true as of Johnson's termination from EWS's

3   employment. In fact, Johnson's initials ("WVJ") still appear in many of the notes

4   fields in EWS's indices alongside information about Johnson's consultations with

5   inventors and Johnson's advice about how best to protect those inventions.

6          6.     As part of his job duties as EWS's Intellectual Property Counsel and

7   Senior Intellectual Property Counsel, Johnson regularly gave EWS legal advice on

8   how to protect its inventions—whether by filing patent applications or by maintaining

9   the concept briefs and invention disclosures as trade secrets indefinitely. Obtaining a

10  patent allows EWS to secure exclusive patent rights for a limited time, while

11  maintaining an invention as a trade secret allows EWS to secure exclusivity for so

12  long as the invention remains secret.

13         7.     Regardless of how EWS protects its inventions and other intellectual

14  property, those assets give EWS a competitive advantage in the competitive financial

15  services field. Maintaining the secrecy of EWS's indices is essential to EWS's ability

16  to maintain certain of its inventions and other intellectual property as trade secrets and

17  preserve its position in the financial services industry. This secrecy, in turn, enables

18  EWS to effectively develop, harvest, acquire, and enforce its intellectual property

19  rights.

20         8.     Knowing this, EWS makes reasonable efforts to maintain the secrecy of

21  its indices (and other privileged, confidential, and sensitive information). One way in

22  which EWS accomplishes this is to restrict full access to the indices to a select group

23  of its employees on a "need-to-know" basis and enforce those restrictions using

24  password protection. A broader group of EWS's employees may be given limited

25  access to the indices for a limited time for the purposes of disseminating various

26  statistics about the company's intellectual property portfolio, but only employees who

27  are added to the group or affirmatively provided "read-only" access can view this

28  data.

1      9.     EWS has invested significant resources to develop, maintain, and

2 safeguard its indices, mostly (but not exclusively) in the form of salaries paid to

3 employees in the legal department, among others. EWS invested these resources

4 during Johnson's employment, and continues to make these investments to this day.

5 **B.    The Privileged Chat**

6      10.     The Privileged Chat occurred on or about November 3, 2022, and

7 references negotiations of a confidential contract with one of EWS's valued partners.

8 The contract under discussion was not executed until November 17, 2022, after which

9 the parties continued to negotiate a series of binding statements of work ("SOWs")

10 that would detail the parties' obligations with respect to the actual work to be

11 completed under the executed contract. The Privileged Chat contains Johnson's legal

12 advice and feedback in response to Ms. Cheney's questions about related negotiations.

13      11.     EWS's contract negotiations with partners and vendors and its internal

14 deliberations about terms are highly confidential and sensitive. EWS's competitors

15 could undermine EWS's position in future negotiations if they had access to this

16 information.

17 **C.    Johnson's Acts of Misappropriation**

18      12.     When EWS terminated Johnson, it knew Johnson had emailed some of

19 EWS's documents to his personal email account, but EWS is still discovering which

20 documents Johnson took, and EWS has no way of knowing which he still possesses.

21      13.     Johnson knew he did not have EWS's authorization to email EWS's

22 indices and other documents to his personal email address. Johnson reviewed and

23 approved EWS's Intellectual Property Policy on multiple occasions (including,

24 without limitation, on November 21, 2014, October 15, 2015, October 10, 2016, and

25 September 19, 2017). As of September 19, 2017, this Policy required EWS's

26 employees, *inter alia*, to "protect Company IP, in addition to the intellectual property

27 of . . . third parties, against deliberate, unintentional, inappropriate, or unauthorized

28 disclosure"; refrain from disclosing "[t]he Company's IP, including trade secrets, . . .

EWS's motion to seal on July 30, 2024. Exhibit 24 is now designated as a "confidential document" on the Arizona Superior Court's docket. An accurate and complete copy of the Arizona Superior Court's Minute Entry is attached as **Exhibit 3**.

17.    EWS did not receive confirmation of Johnson's involvement with Defendants Brandon O'Loughlin and P.A.Z.E., LLC until June 11, 2024, when the metadata from one of P.A.Z.E.'s filings in the TTAB proceedings revealed Johnson as the author of that document.

18.    Until Johnson filed and served his opposition papers on August 8, 2024, EWS was not aware that Johnson still possessed the documents marked as Exhibits 6, 7, 8, 10, and 12 to his declaration. *See* Dkt. 24-2 at 33–34, 36–39, 41, 48–50, 54–76.

19.    According to his LinkedIn page, Frankie Ho was the Director and Associate General Counsel, Intellectual Property, at PING Golf from August 2006 through November 2013. Accurate and complete copies of Frankie Ho's LinkedIn profile and resume are attached as **Exhibit 4**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 15, 2024 _____, in Chicago, Illinois _____.

_____
Paras Shah

# **EXHIBIT B**

**KILPATRICK TOWNSEND & STOCKTON LLP**
Erick Durlach, Arizona Bar No. 024253
*edurlach@ktslaw.com*
Dennis L. Wilson, California Bar No. 155407
(admitted *pro hac vice*)
*dwilson@ktslaw.com*
Sara K. Stadler, New York Bar No. 2620276
(admitted *pro hac vice*)
*sstadler@ktslaw.com*
6909 E. Greenway Parkway, Suite 100
Scottsdale, Arizona 85254-2149
Tel: (602) 726-7319
Fax: (623) 321-1009

**BRYAN CAVE LEIGHTON PAISNER LLP**
George C. Chen, Arizona Bar No. 019704
*george.chen@bclplaw.com*
Jacob A. Maskovich, Arizona Bar No. 021920
*jamaskovich@bclplaw.com*
Two North Central Avenue, Suite 2100
Phoenix, Arizona 85004-4406
Tel: (602) 364-7000
Fax: (602) 364-7070

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Early Warning Services, LLC,<br><br>Plaintiff,<br><br>v.<br><br>Warren Vurl Johnson; Brandon O'Loughlin; and P.A.Z.E., LLC,<br><br>Defendants. | Case No. CV-24-01587-PHX-SMB<br><br><br>**PLAINTIFF EARLY WARNING SERVICES, LLC'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION [16]** |

## I.   <u>INTRODUCTION</u>[1]

Johnson's efforts to relitigate his termination from EWS's employment are irrelevant to EWS's trade secret claims and intended to distract the Court from Johnson's unlawful conduct. Even at this stage of the proceedings, the evidence clearly demonstrates EWS's likelihood of success on its claims against Johnson for trade secret misappropriation, and the other preliminary injunction factors also favor EWS. Johnson's conduct has already harmed EWS and threatens irreparable harm to EWS's intangible assets and reputation. EWS is entitled to a preliminary injunction.

## II.   <u>ARGUMENT</u>

### A.   EWS Owns Protectable Trade Secrets.

Johnson's principal argument on EWS's trade secret claims is that EWS has not specifically identified any protectable trade secrets because, in his view, neither the indices maintained by members of EWS's legal department nor the Microsoft Teams chat between Johnson and EWS's General Counsel, Tracy Cheney, contain privileged information or trade secrets. Johnson is incorrect on both counts.

#### 1.   EWS's Indices are Both Privileged and Trade Secrets.

Specific members of EWS's legal department maintain indices containing detailed information about ongoing legal matters and business initiatives involving EWS's intellectual property, including its patents, trademarks, and domain names. Declaration of Paras Shah ("Shah Decl.") ¶ 2. Johnson claims these indices cannot be trade secrets because:

- He created templates for EWS's indices while employed by another company;[2]

---

[1] This Reply incorporates the defined terms used in EWS's Motion for Preliminary Injunction and Supporting Memorandum of Points and Authorities. *See* Dkt. 16.

[2] It therefore is not surprising that "Frankie Ho" was listed as the author of EWS's indices. *See* Ex. 11 to Declaration of Warren V. Johnson in Opposition to Plaintiff Early Warning Services, LLC's Motion for Preliminary Injunction ("Johnson Decl."), Dkt. 24-2 at 52. According to his LinkedIn page, Frankie Ho was formerly a Director and Associate General Counsel at PING Golf. Shah Decl. ¶ 19, Ex. 4. PING is Johnson's former employer. Johnson Decl., Dkt. 24-1 at 2 ¶ 4.

1

- The indices were subsequently populated with "publicly accessible data";
- The indices were "shared with other attorneys and employees" at EWS;
- EWS "did not invest substantial resources" in its indices; and
- The indices' secrecy is "not critical for EWS to file patents or trademarks."

Johnson Decl. at 2, 4, ¶¶ 4, 14–16. The facts of record show otherwise.

Johnson claims to have created the templates for EWS's indices while employed by another company (while also conceding the templates were created by Frankie Ho), *see id.* at 2 ¶ 4, but those templates had no value to EWS until they were populated with EWS's privileged and confidential information. Johnson's job duties with EWS included populating the indices with EWS's data, which enabled members of the legal department to track the development, harvesting, acquisition, and enforcement of EWS's intellectual property rights. Shah Decl. ¶ 3. Johnson *falsely* claims that EWS's indices "*only* include easily ascertainable public data and incidental data like dates of reception [sic] and completion." Response to Plaintiff's Application for Preliminary Injunction, Dkt. 24 ("Opp.") at 13 (emphasis added). While some of EWS's data are publicly accessible (*e.g.*, application numbers and dates), much of the data in EWS's indices are privileged, proprietary, highly confidential, and valuable precisely because they are kept secret.

For example, as of Johnson's termination, EWS's Concept Brief Index and Invention Disclosure Index tracked working titles of unpublished inventions (which often disclose aspects of the inventions themselves), along with notes reflecting the details of Johnson's consultations with inventors and Johnson's legal advice about which components of inventions would be considered patentable. Shah Decl. ¶ 5. Johnson *falsely* asserts "the indexes do not have information that would allow disclosure," Opp. at 13, but Johnson regularly gave EWS legal advice on how to protect its inventions—whether by filing patent applications (thereby securing exclusive patent rights) or by maintaining the invention disclosures as trade secrets indefinitely (thereby securing exclusivity for so long as the invention remains secret).

2

1    Shah Decl. ¶ 6. These inventions give EWS a competitive advantage, and Johnson's

2    advice (which also is privileged) helped EWS commercialize its investments. *Id.* ¶ 7.

3            The secrecy of EWS's indices was and is essential to EWS's ability to maintain

4    certain of its inventions (and other intellectual property) as trade secrets and preserve

5    its position in the financial services industry. *Id.* Knowing this, EWS makes

6    reasonable efforts to maintain the indices' secrecy, restricting full access to select

7    employees on a "need-to-know" basis and enforcing these restrictions using password

8    protection. *Id.* ¶ 8. Despite Johnson's unsupported claims to the contrary, Johnson

9    Decl. at 4 ¶¶ 15–16, EWS has invested significant resources to develop, maintain, and

10   safeguard its indices. Shah Decl. ¶ 9.

11           Johnson attempts to minimize the privileged, confidential, and secret nature of

12   EWS's indices by labeling the notes fields as "No Legal Conclus[i]ons, Cryptic

13   Notes." *See* Johnson Decl. Ex. 3, Dkt. 24-2 at 24. In fact, the information in EWS's

14   indices is highly revealing to those who understand the subject matter. Johnson's brief

15   acknowledges that, while at EWS, he "managed thousands of matters, documents,

16   communications, deadlines, templates, and policies through the docketing system he

17   devise[d], *and the Indexes that tied it all together*." Opp. at 5 (emphasis added).

18   Maintaining the secrecy of EWS's indices is critical to EWS's ability to effectively

19   develop, harvest, acquire, and enforce its intellectual property rights. Shah Decl. ¶ 7.

20           **2.      The Privileged Chat is Both Privileged and a Trade Secret.**

21           Johnson also makes several attempts to undermine EWS's claims of privilege

22   and secrecy in the Privileged Chat, none of which is persuasive. First, Johnson argues

23   the Privileged Chat cannot be privileged because (a) it was "a conversation between

24   two attorneys," "not between an attorney and a client," and (b) even if legal advice

25   was given, "only Johnson's messages need to be redacted." Opp. at 6, 26, 27; Johnson

26   Decl. at 3 ¶ 9. As a practicing attorney for over a decade, Johnson should know better.

27   The Supreme Court instructed in *Upjohn Co. v. United States*, 449 U.S. 383 (1981),

28   that "the privilege exists to protect not only the giving of professional advice to those

                                              3

# EXHIBIT C

reasonable measures to keep that data secret. 1-SER-10–11. The District Court therefore did not err in rejecting Johnson's argument that EWS's Indices are unprotectable as a common industry practice.

>   **4. The District Court Did Not Err in Rejecting Johnson's Argument that He Owns Trade Secrets in EWS's Indices Because He "Created" the Excel Spreadsheets Containing EWS's Data.**

Finally, Johnson argues that EWS "lacks standing" to sue Defendants for misappropriating its trade secrets in the Indices because Johnson created the "Tools" before joining EWS, and Johnson therefore owns the information "EWS now claims as trade secrets."[13] Br. at 5, 29–31. According to Johnson, the "Tools" are the Excel spreadsheets containing EWS's data, "designed as universal Tools that could be used in any position, at any job, in any industry." *Id.* at 30. Johnson argues he designed the Tools "to make the data contained therein easily separable from the Tool itself." *Id.* at 14.

Again, Johnson's argument misses the point. EWS does not claim the templated Indices (i.e., the rows, columns, headings, standard

---

[13] Johnson also describes his interest in EWS's Indices using copyright language. *See* Br. at 29. There is no copyright claim in this case, nor could Johnson plausibly plead such a claim.

formulas, and conditional rules and formatting) are trade secrets, but claims ownership of the *information and data those spreadsheets contain.* As the holder of the trade secrets, EWS defines the scope of its trade secrets, not Johnson. *InteliClear*, 978 F.3d at 658 (collecting cases and explaining "plaintiffs 'must identify the trade secrets'" (citation omitted)).

The relevant question is whether the *contents* of EWS's Indices are trade secrets. As the District Court asked Johnson during oral argument, "So the blank index might not be trade secret, but the information in it created for Early Warning, why is that not protected?" 2-SER-156. The District Court went on to find that information in EWS's Indices *is* likely protectable as trade secrets because it comprises "a wealth of [EWS's] proprietary data vital to EWS's patent and trademark strategies." 1-SER-10–11. The "Tools" merely house and present this data.

As for Johnson's claim to own EWS's Indices because "he created and controlled" them while employed by EWS, the District Court properly found this argument "does not withstand even modest scrutiny, and thus the Court finds that Johnson's alleged creation or treatment of the Indices has no bearing on Plaintiff's success on the merits of its trade secrets claims." 1-SER-11. This is because the record includes EWS's IP

34

# EXHIBIT D

 **Gmail**

**Warren Johnson <warrenvjohnson@gmail.com>**

## U.S. Copyright Office Application - 1-15059619661 Invention Disclosure Workflow Assist

**Copyright Office** <cop-ad@loc.gov>                                    Tue, Jan 13, 2026 at 9:24 AM
To: warrenvjohnson@gmail.com

Dear Warren,

I was able to complete my examination of your application today. Your registration number is TXu002519256 and the effective date of registration for your claim is December 30, 2025. The online public record will be updated with the details of your claim tomorrow and you should receive your certificate in the mail within the next 3-6 weeks.

Sincerely,

Daniel Feitel (he/him)
Literary Division
Office of Registration Policy & Practice
United States Copyright Office

When replying to this email, please include the following thread id (entire line) within the body of your response to expedite routing to the correct office.

[THREAD ID:1-6X8PA02]

-----Original Message-----

From:  warrenvjohnson@gmail.com
Sent:  1/9/2026 06:14:28 PM
To:  Copyright Office <cop-ad@loc.gov>
Subject:  Re: U.S. Copyright Office Application - 1-15059619661 Invention Disclosure Workflow Assist

Hello Mr. Feitel,

Thank you for confirming the effective registration date of December 30, 2024 for my application.

I wanted to reiterate that the work was done in 2014, that was the last time revisions were made to the template.

I am preparing to file a copyright infringement lawsuit and need the registration number immediately.

Can you please provide:

  1. The registration number
  2. Confirmation that the certificate is being processed
  3. Estimated date the certificate will be mailed

If the registration number is not yet assigned but the registration is approved with effective date December 30, please confirm this in writing so I can cite the effective date in my complaint.

Time is urgent due to ongoing infringement.

Thank you, Warren

[Quoted text hidden]

# **EXHIBIT E**

**Registration #:** TXu002520557
**Service Request #:** 1-15073430291

## Mail Certificate

Warren Johnson
215 E 18th St
Lawrence, KS 66044

**Priority:** Special Handling      **Application Date:** January 09, 2026

## Correspondent

**Name:** Warren Johnson
**Email:** warrenvjohnson@gmail.com
**Telephone:** (208)317-1686
**Address:** 215 E 18th St
Lawrence, KS 66044

**Registration Number**

# TXu 2-520-557

**Effective Date of Registration:**
January 09, 2026
**Registration Decision Date:**
January 20, 2026

## Title _____

**Title of Work:** Intellectual Property General Matter Management System

## Completion/Publication _____

**Year of Completion:** 2014

## Author _____

- **Author:** Warren Johnson
  **Author Created:** computer program
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant _____

**Copyright Claimant:** Warren Johnson
215 E 18th St, Lawrence, KS, 66044

## Certification _____

**Name:** Warren Johnson
**Date**: January 09, 2026

**Correspondence:** Yes