Warren V. Johnson
warrenvjohnson@gmail.com
215 E 18th St
Lawrence, KS 66044
Johnson, Pro Se

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

Mr. Warren V. Johnson,
Plaintiff,

*v.*

Early Warning Services, LLC,
Defedndant.

Case No. 1:26-cv-00441

## JOHNSON'S MOTION FOR LEAVE TO FILE
## SECOND AMENDED COMPLAINT

## CERTIFICATE OF CONFERRAL

Pursuant to Judge Chang's standing orders, Plaintiff Warren V. Johnson ("**Johnson**")

conferred with Early Warning Services LLC ("**EWS**") counsel via email on February 26, 2026,

regarding the relief sought in this motion. EWS's counsel indicated that EWS opposes the

motion.

## RELIEF REQUESTED

Pursuant to Fed. R. Civ. P. 15(a)(2), Plaintiff Warren V. Johnson ("**Johnson**") respectfully

moves for leave to file the attached Second Amended Complaint ("**SAC**") and Exhibits (**Exhibit

A**). Leave should be granted because: (1) the Complaint **limits claims to post-June 28, 2024

conduct**, eliminating any compulsory counterclaim or claim splitting defense as a matter of law;

1

and (2) Johnson's Employment Agreement **expressly denied Early Warning Services, LLC ("EWS") authorization to access his source code** by writing "NONE" in the Attachment associated with a license grant, thereby satisfying the DMCA's "without authority" element as a matter of law.

## PRELIMINARY STATEMENT

This Court should grant leave to file the Second Amended Complaint for two independent reasons, each **dispositive as a matter of law**.

**First: The Complaint is expressly limited to claims arising from wrongs committed after June 28, 2024—the date EWS filed its Arizona lawsuit. Claims based on post-filing conduct cannot be barred by compulsory counterclaim or claim splitting rules. This is a bright-line rule of law.** *Lawlor v. National Screen Service Corp.*, 349 US 322, 327-328, (1956) ("That both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct…may frequently give rise to more than a single cause of action.") *Smith v. Potter*, 513 F.3d 781, 783–84 (7th Cir. 2008).

**Second: Johnson's own Employment Agreement—which Johnson, as Senior IP Counsel, took ownership over for 9 years—expressly denies EWS any authorization to access his copyrighted source code.** Paragraph 3 of the Agreement is a "Background IP" licensing clause. (See Proposed **SAC**, attached hereto as **Ex. A**, at SAC Ex. A). It required Johnson to list any pre-existing intellectual property he was willing to license to EWS in Attachment A. **Johnson did not merely leave the attachment blank—he definitively wrote "NONE"—thereby expressly denying EWS any license or authorization to access his copyrighted source code.** This express, written denial of authorization satisfies the "without the authority of the copyright owner" element of the Digital Millennium Copyright Act (17 U.S.C. §

1201) **as a matter of law**. Distinguishing EWS's actions from other cases involving passwords is the express and written denial of authorization to access the source code *and* a **two tier security measure that protected the copyrighted source code**.

Johnson was Senior Intellectual Property Counsel at EWS and personally owned and repeatedly revised this very Employment Agreement during his tenure. He knows its provisions, its flaws, and its intended operation—including the deliberate choice to write 'NONE' in Attachment A, which granted EWS no license to his pre-existing copyrighted works.

## INTRODUCTION

Leave should be granted because: **(1) the Complaint limits claims to post-June 28, 2024 conduct, eliminating any compulsory counterclaim or claim splitting defense as a matter of law; and (2) Johnson's Employment Agreement—which Johnson owned for 9 years as Senior IP Counsel—expressly denied EWS authorization to access his source code by requiring a license grant for any IP listed in Attachment A, where Johnson wrote "NONE," thereby satisfying the DMCA's "without authority" element as a matter of law.**

This motion seeks leave to file a Second Amended Complaint that does three things: (1) it narrows Johnson's claims to EWS's infringing conduct occurring **on or after June 28, 2024**, the date EWS first put Johnson on notice of its adverse claims by suing him in Arizona; (2) it incorporates the two copyright registrations that were issued in December 2025 and January 2026, after the refiling of Johnson's applications; and (3) it adds a new, powerful claim under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201, based on EWS's own recently-admitted conduct.

None of these amendments are futile. **The temporal limitation disposes of any procedural defense as a matter of law. The "NONE" in Attachment A disposes of the**

3

**DMCA's authorization element as a matter of law.** The amendments are proper and mindful of the Court's time and resources by depending exclusively on the sworn admissions of EWS's own Senior Intellectual Property Counsel, Paras Shah, and EWS General Counsel, Tracy Cheney, who have both admitted that the two-tier password system at issue was implemented to protect "proprietary" and "indispensable" information. **Arguing otherwise now would trigger judicial estoppel.**

Furthermore, by limiting both claims to conduct after June 28, 2024, this amendment eviscerates any potential defense of res judicata, claim splitting, or compulsory counterclaim. The amendment is timely, causes no prejudice, and is anything but futile.

## PROCEDURAL BACKGROUND

1. EWS Early Warning Services, LLC ("EWS") filed suit against Johnson in the District of Arizona on June 28, 2024 (Case No. CV-24-01587-PHX-SMB), asserting trade secret misappropriation related to Johnson's own copyrighted docketing software (the "Copyrighted Works"). This was the first time Johnson learned that EWS was using his property without authorization, or that EWS was laying a claim of ownership over his Copyrighted Works.

2. On August 15, 2024, EWS filed the Declaration of its Senior Intellectual Property Counsel, Paras Shah, in the Arizona action. In that sworn declaration, Mr. Shah admitted that the Copyrighted Works are "indispensable" to EWS's legal department operations, that his job duties include "populating these indices" and "maintaining them," and that EWS "continues to make these investments... to this day." (Shah Dec., ¶¶ 2, 9). Critically, he described the password protections on these files as "reasonable measures for maintaining secrecy" for EWS's "proprietary information."

3. The story of Paras Shah demonstrates the great value of the Copyrighted works. Johnson hired, managed and trained Mr. Shah to be his predecessor. However, EWS surprisingly and wrongfully terminated Johnson only two months after Mr. Shah's hiring date; before Johnson gave Mr. Shah full access to the Copyrighted Works, and before Johnson could fully train Mr. Shah on their use.

4. Despite this, Copyrighted Works have allowed Mr. Shah to manage the complexities and risks of a thriving IP portfolio using the systems Johnson implemented, designed, and grew over 9 years. Notably, this has been a time when EWS has established an entirely new national brand "Paze" (protection facilitated by Copyrighted Works), technology (inventions, patents, trade secret protection facilitated by Copyrighted Works), SaaS and APIs for Paze (domain name portfolio and renewals facilitated by Copyrighted Works), and defended their same IP rights against challenge (facilitated by Copyrighted Works).

5. Essentially the Copyrighted Works were the "how" behind Mr. Shah's success at EWS. He was under-trained, only 2 months of overlap between Johnson and Shah, and succeeded in maintaining an entire I.P. department in the heart of a chaotic, tech heavy, and changing corporate culture.

6. Johnson immediately notified EWS of his ownership. Despite this notice, EWS chose to continue its unauthorized use, and continues to use the Copyrighted Works to this day.

7. The United States Copyright Office issued the first of two registrations for the Copyrighted Works on December 30, 2025 (Reg. No. TXu002519256), and the second on January 9, 2026 (Reg. No. TXu002520557). These registrations are the statutory prerequisite for this action and no claim could be brought until Johnson secured them.

8. Johnson filed his original Complaint in this action on January 13, 2026, and a ministerial First Amended Complaint on January 20, 2026, solely to correct a formatting issue.

9. EWS has not answered. No Rule 26(f) conference has been held. No discovery has been conducted. No scheduling order has been entered. The case is in its earliest stages.

## LEGAL STANDARD

Under Fed. R. Civ. P. 15(a)(2), a court "should freely give leave when justice so requires." The Seventh Circuit instructs that leave should be granted "especially in the absence of prejudice or surprise to the opposing party." *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 861 (7th Cir. 2001). Denial is only justified by a showing of undue delay, bad faith, repeated failure to cure, undue prejudice, or **futility**. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The burden is on the party opposing amendment to demonstrate why leave should be denied. *Aldridge v. Forest River, Inc.*, 635 F.3d 870, 875 (7th Cir. 2011).

## THE PROPOSED AMENDMENTS

The Second Amended Complaint limits claims to **post-June 28, 2024** conduct, eliminating any compulsory counterclaim or claim splitting defense as a matter of law; and (2) includes Johnson's Employment Agreement which expressly denied EWS authorization to access his source code by requiring a license grant for any IP listed in Attachment A, where Johnson wrote "NONE," thereby satisfying the DMCA's "without authority" element as a matter of law. This is shown through the following substantive changes:

- **Temporal Limitation:** New paragraphs 19 and 20 expressly limit all claims to EWS's infringing conduct occurring **on or after June 28, 2024,** the date of EWS's filing of the AZ Action operative complaint. The **nucleus of facts post-Settlement** (i.e., after August 2023) that created the DMCA claims and the Copyright claims are different in space,

time, and rights when compared to the pre-Settlement nucleus of facts (i.e., before August 23).

The pre-Settlement nucleus of facts supporting the trade secret misappropriation claims, unlike Copyright or DMCA, only creates a single cause of action.[1] However, Johnson sees the Second Amended Complaint as furthering the difference in the nucleus of facts between the two: a "belt and suspenders" approach that places the claims squarely outside the scope of any prior litigation. The supreme court has made clear that the same course of wrongful conduct by a defendant may give rise to more than a single cause of action. *Lawler v Nat'l Screen Serv. Corp,* 349 U.S. 322, 327-328(1955*).* And it **is a bright line rule that wrongful actions by a defendant after a first complaint is filed are new transactions** and cannot be considered compulsory or claim splitting as they are not subject to res judicata. *Smith v. Potter*, 513 F.3d 781, 783–84 (7th Cir. 2008).

- **Copyright Registrations:** New paragraph 29 adds allegations that EWS's infringing conduct continued without interruption **after the effective registration dates**, preserving Johnson's right to seek statutory damages for post-registration conduct under 17 U.S.C. § 504(c).

- **Settlement Reservation:** New paragraph 17 quotes Section 5 & 6 of the August 2023 settlement agreement, which explicitly withhold waiver of "claims up to the signing date of this Agreement" *and* preserved "claims that may arise after Johnson signs this

---

[1] According to Cheney and EWS, the pre-settlement nucleus of facts took place "between November 2022 and January 2023." (Cheney Dec, Dkt 22-1 at pg 40) However, according to the District Court the nucleus of facts giving rise to the pre-settlement trade secret claims was an "undetermined time" before January 2023. Either one, if taken as true despite their inconsistency, stops the clock for misappropriation in January 2023.

Agreement," respectively, preempting any release or waiver defense. (SAC, Ex. A, Annotated excerpts from Settlement Agreement)

- **New Count III – DMCA Violation:** The amendment adds a claim under 17 U.S.C. § 1201(a)(1) for circumvention of technological measures. This claim is based on the two-tier access system Johnson implemented (an Excel "Password to Modify" coupled with SharePoint permissions) and the unauthorized post-termination use of that password by EWS (via Mr. Shah) to access the protected source code of the Copyrighted Works. **Critically, Johnson had expressly denied any such authority via the Employment Agreement—writing "NONE" in Attachment A where a license would have been required.** (SAC, Ex. D, Annotated excerpts from Employment Agreement)

## ARGUMENT

### A. There Has Been No Undue Delay, Bad Faith, or Prejudice.

The motion is timely. The predicate copyright registrations issued less than two months ago. The facts underpinning the DMCA claim were clarified and confirmed by EWS's own recent admissions. Johnson has acted with dispatch. EWS will suffer no prejudice, as it has not yet answered and discovery has not begun. An amendment at this stage cannot be prejudicial. *See Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

### B. The Amendment Narrows, Not Expands, the Litigation.

The amendment strategically narrows the claims to post-June 28, 2024 conduct. This serves judicial economy and benefits EWS by reducing its potential exposure for pre-June 28 conduct. It is not an act of bad faith; it is a strategic refinement to focus on the most legally robust claims.

**C. The Amendment is Not Futile and is Mindful of the Court's Time and Resources**

These amendments are not futile because: (1) the Complaint limits **claims to post-June 28, 2024** conduct, eliminating any compulsory counterclaim or claim splitting defense as a matter of law; and (2) Johnson's Employment Agreement expressly denied EWS authorization to access his source code by requiring a license grant for any IP listed in Attachment A, where Johnson wrote "NONE," thereby satisfying the DMCA's "without authority" element as a matter of law. (SAC, Ex. B)

Further, the Supreme Court has established that whether "… both suits involved "essentially the same course of wrongful conduct" is not decisive. Such a course of conduct…may frequently give rise to more than a single cause of action." *Lawlor v. National Screen Service Corp.*, 349 US 322, 327-328, (1956).

**1. Post-June 28, 2024 Conduct Eliminates Any Compulsory Counterclaim or Claim Splitting Defense as a Matter of Law.**

**First:** The Complaint is expressly limited to claims arising from wrongs **committed after June 28, 2024—**the date EWS filed its Arizona lawsuit. **Claims based on post-filing conduct cannot be barred by compulsory counterclaim or claim splitting rules. This is a bright-line rule of law.** *Smith v. Potter*, 513 F.3d 781, 783–84 (7th Cir. 2008). The Complaint is expressly limited to claims arising from wrongs committed **after June 28, 2024—**the date EWS filed its Arizona lawsuit. Claims based on post-filing conduct cannot be barred by compulsory counterclaim or claim splitting rules. *See Id. and Lawler*.

Res judicata does not bar these claims. The claims were not ripe in any prior proceeding because registration had not issued. *Smith v. Potter* (7th Cir. 2008) ("[r]es judicata does not bar a suit based on claims that accrue after a previous suit was

9

filed"); *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 914 (7th Cir. 1993); *Ubiquiti Networks, Inc. v. Cambium Networks, Inc.*, No. 18 C 5369, 2019 WL (N.D. Ill. Nov. 14, 2019). This amendment only brings claims that arise from **post-June 28, 2024** conduct, which were new wrongs and are a new transaction under *Smith*. And the continuing-wrong doctrine creates new causes of action with each unauthorized act of reproduction or unauthorized access to the Copyrighted Works. *Lawlor v. National Screen Serv. Corp.* (1955).

       The rule against claim-splitting and the doctrine of *res judicata* do not require a Johnson to "supplement [their] complaint forever" or amend a pending action to include new causes of action that arise after the operative complaint is filed. *See Ramona LaRue, Inc. v. Roadget Business PTE. Ltd.*, No. 23-cv-15340, 2024 WL 1556398, at \*4 (N.D. Ill. Apr. 10, 2024) (holding that "new acts of infringement create new causes of action" and rejecting the notion that a Johnson must continuously update a complaint to include post-filing wrongs). This "bright-line rule" is firmly established in the Seventh Circuit, which recognizes that the scope of a lawsuit is generally fixed at the time of filing. *Brooks-Ngwenya v. Thompson,* 202 F. App'x 125, 127 (7th Cir. 2006) ("a precondition to filing a claim "must be fulfilled before the litigation begins. Satisfaction of the condition while the suit is pending does not avoid the need to start anew."); *See Palka v. City of Chicago*, 662 F.3d 428, 437 (7th Cir. 2011) (noting that *res judicata* does not apply to claims that did not exist when the first suit was filed); *see also Tank v. T-Mobile USA, Inc.*, No. 12-cv-10261, 2013 WL 4413922, at \*10 (N.D. Ill. Aug. 15, 2013) (confirming that a

Johnson is not required to amend a pending complaint to include post-filing events to avoid claim-splitting).

Furthermore, where a EWS commits a recurring wrong—such as distinct acts of copyright infringement—each act creates a separate legal injury. *See VitalGo, Inc. v. Kreg Therapeutics, Inc.*, No. 16-cv-5577, 2017 WL 1196881, at *6 (N.D. Ill. Mar. 29, 2017) (denying dismissal where claims were based on a different competing product introduced after the initial litigation began). This is particularly true where administrative prerequisites, like copyright registration, act as a bar to filing until the specific wrong occurs and the registration is secured. *See Jack Cooper v. Retrieval Masters Creditors Bureau, Inc.*, 42 F.4th 688, 693-95 (7th Cir. 2022) (reversing sanctions and acknowledging that separate lawsuits for subsequent violations of the same statute are permissible where the wrongs occurred after the first filing); *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 415 (N.D. Ill. 2012) (distinguishing between claims that could have been brought at the time of the original complaint and those that arise thereafter). Accordingly, post-filing wrongs are not "compulsory" additions to an ongoing case and may be brought as independent causes of action.

## 2. Johnson Wrote "NONE" in Attachment A, Expressly Denying Authorization—Satisfying the DMCA's "Without Authority" Element as a Matter of Law.

**Second:** Johnson's own Employment Agreement—which Johnson, as Senior IP Counsel, drafted and revised—expressly denies EWS any authorization to access his copyrighted source code. **A true and correct annotated copy is attached to the Second Amended Complaint at Ex. D.** Paragraph 3 of the Agreement is a "Background IP" licensing clause. It required Johnson to list any pre-existing intellectual property he was

11

willing to license to EWS in Attachmnet A. **Johnson did not merely leave the attachment blank—he definitively wrote "NONE"—thereby expressly denying EWS any license or authorization to access his copyrighted source code.**

This express, written denial of authorization satisfies the "without the authority of the copyright owner" element of the Digital Millennium Copyright Act (17 U.S.C. § 1201) as a matter of law. When EWS's agent entered the SharePoint site, opened the "read only" file, and used the password to access the source code post-termination, that act was necessarily circumvent without authority. ("DMCA claims are facially plausible because it pleaded that the Eclipse parties "remove[d] . . . a technological measure[ ] without the authority of the copyright owner." § 1201(a)(3)(A)") *ECLIPSE GAMING SYSTEMS, LLC v. Antonucci*, Dist. Court, ND Illinois 2019.

### i. The Two-Tier System is a Technological Protection Measure.

EWS has already admitted this exact system meets the DMCA's standard. In the Shah Declaration, EWS described Johnson's two-tier access system— password protection coupled with "read-only" restrictions—as part of its **"reasonable efforts"** to maintain secrecy. (Ex. C ¶ 8).

The system operated in two distinct tiers:

- **First Tier:** Johnson granted access to a "read-only" version of the Index. This tier displayed data inputs and outputs but **did not provide access to the Copyrighted Works themselves**—the formulas, logic, and structure that constitute the protected expression.

- **Second Tier:** Access to the Copyrighted Works required Johnson's personal password. Without this second tier, a user could see the data housed within

the Index but could not view, modify, or copy the underlying Copyrighted Work.

This is precisely the type of access control the DMCA protects. 17 U.S.C. § 1201(a)(3)(B) defines an effective technological measure as one that "in the ordinary course of its operation, requires the application of information... with the authority of the copyright owner, to gain access to the work." Johnson's system did exactly that: it required **his** password, applied with **his** authority, to access **his** copyrighted expression.

**This system is not Excel's default password behavior.** It was Johnson's custom, deliberate configuration—and EWS itself has admitted that such password protections constitute reasonable security measures. (Ex. C ¶ 8).

**This case is therefore distinguishable from those involving mere password sharing.** In *Eclipse Gaming Systems, LLC v. Antonucci*, No. 18 C 4995, 2019 WL 1317093 (N.D. Ill. Mar. 22, 2019), the defendant avoided a password and used an older version of the Plaintiff's software to avoid the license check, effectively removing the protection in its entirely. Here a similar removal has taken place in addition to the unauthorized use of the password. EWS had to **remove Johnson's SharePoint permissions entirely**, grant access to a "read-only" view it did not control, and **then apply Johnson's personal password**— which it had no authority to use—to unlock the Copyrighted Works themselves. This is not simple password use; it is circumvention of a dual-layer protection system that Johnson alone controlled.

**ii. The Seventh Circuit's "Nexus" Requirement is Satisfied.**

13

The Seventh Circuit requires a nexus between the measure and the copyrighted work itself. See *321 Studios v. MGM Studios, Inc.*, 307 F. Supp. 2d 1085 (N.D. Cal. 2004) (discussing nexus requirement adopted by multiple circuits). Here, the password did not just control access to a computer or a file; **it controlled access to the expressive, protectable elements within the file**—the formulas, logic, and structure that make up the Copyrighted Works source code. Without the password, a user enters the file in "read only" mode and sees only the inputs and outputs that the Copyrighted Works consumes and acts on, not the Copyrighted Work itself. The nexus is direct, intentional, and undeniable.

### iii. Mr. Shah's Unauthorized Access Constitutes Circumvention.

The DMCA defines "circumvent" as "to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). After Johnson's termination, a former trainee, Mr. Shah, lacking any authority from the copyright owner, used his ability to access the SharePoint site, granted by Johnson, and the password/key, shared by Johnson to train Mr. Shah, to bypass the read-only restriction and access modify mode and the Copyrighted Works source code. This is a textbook act of circumvention. *See Eclipse Gaming System*. This is distinct from other password cases in two respects: **the two-tier access system Johnson had in place that required SharePoint permissions granted by Johnson to "read only" then an additional key/password, and the express denial of authorization by the copyright owner via the Employment Agreement**—specifically, Paragraph 3 and the word "NONE" in Attachment A.

14

### iv. Judicial Estoppel Prevents EWS from Contesting this Claim.

This is the most potent argument against futility. In the Shah Declaration, EWS itself described the two tiered system as a protection for its "proprietary information" and as part of its "reasonable efforts" to maintain secrecy. (Ex. C at ¶ 8). EWS successfully used this characterization in the Arizona litigation to argue that its indices were trade secrets entitled to protection.

**It cannot now, in this litigation, flip a switch and argue that the very same system was not a meaningful "technological measure" under the DMCA.** The Seventh Circuit applies judicial estoppel to prevent a party from "playing fast and loose with the courts." See *In re Knight-Celotex, LLC*, 695 F.3d 714, 721 (7th Cir. 2012). A party who successfully argues a position in one proceeding cannot later adopt a contradictory position in another proceeding simply because it is more convenient. *See Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

**EWS is judicially estopped from taking this contradictory position.** Having sworn under oath that the password-protected, two-tier access system constitutes "reasonable efforts" to protect its information, EWS cannot now argue that the same system is not an "effective technological measure" under the DMCA. The two standards are functionally identical in this context—both require that the system actually control access in the ordinary course of operation. EWS's own admissions establish that it does.

### D. The Amendment is Consistent with the Existing Narrative.

The DMCA claim does not introduce new facts; it provides a new legal theory for facts already pled and admitted. Johnson's ownership, his creation of the tools, and his implementation of access controls are all in the original complaint. The Shah Declaration, filed in a related case and referenced here, is a matter of public record. The amendment simply connects these dots under the DMCA.

## CONCLUSION

For the foregoing reasons—because the Complaint is limited to post-June 28, 2024, conduct, eliminating procedural bars, and because Johnson wrote "NONE" in Attachment A, expressly denying authorization and satisfying the DMCA's core element—Johnson respectfully requests that the Court grant leave to file the Second Amended Complaint.

Respectfully submitted,

Dated: _March 2, 2026

/s/ Warren V. Johnson
Warren V. Johnson
215 E 18th St
Lawrence, KS 66044
Tel: (208) 317-1686
warrenvjohnson@gmail.com
Johnson, Pro Se

16

**[PROPOSED ORDER]**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MR. WARREN V. JOHNSON,
Plaintiff,
v.
EARLY WARNING SERVICES, LLC,
Defendant.

Case No. 1:26-cv-00441

**ORDER GRANTING JOHNSON'S MOTION FOR LEAVE TO FILE SECOND
AMENDED COMPLAINT**

Upon consideration of Johnson Warren V. Johnson's Motion for Leave to File Second
Amended Complaint, and any response thereto, and good cause appearing:

IT IS HEREBY ORDERED that the Motion is GRANTED.

IT IS FURTHER ORDERED that the attached Second Amended Complaint shall be deemed
filed as of the date of this Order.

IT IS FURTHER ORDERED that EWS's pending motions (Doc. No. 022) is DENIED AS
MOOT as directed at a superseded pleading.

IT IS SO ORDERED.

Dated: _____

United States District Judge Chang

**<u>CERTIFICATE OF SERVICE</u>**

I, Warren V. Johnson, hereby certify that on March 2, 2026, I electronically filed the foregoing Motion for Leave to File Second Amended Complaint and attached Second Amended Complaint with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

<u>/s/ Warren V. Johnson</u>
Warren V. Johnson
215 18th Street
Lawrence, KS 66044
